Craig Missakian (SBN 125202)
LAW OFFICES OF CRAIG MISSAKIAN
116 Club Road
Pasaenda, CA 91105
Phone: (818) 802-9811
Email: craig@cmlawpartners.com

Attorney for Defendant
Justice Jeffrey W. Johnson

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA SAUQUILLO,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CALIFORNIA HIGHWAY PATROL, ET AL.,<br><br>　　　Defendants. | Case No.: 19-CV-07651-JFW-PJW<br><br>DEFENDANT JUSTICE JEFFREY W. JOHNSON'S NOTICE OF MOTION AND MOTION UNDER F.R.CIV.P RULE 12(B)(6): MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF<br><br>DATE: October 21, 2019<br>TIME: 1:30 p.m.<br>CTRM: 7A<br><br>[This motion is made following the conference of counsel pursuant to California Code of Civil Procedure § 430.41 which took place by phone and email on various dates beginning 8/14/2019 prior to removal of the action.] |

PLEASE TAKE NOTICE that on October 21, 2019 at 1:30 p.m. in Courtroom 7A located in the United States Courthouse, 350 W. 1st Street, Los

1

DEFENDANT JEFFREY W. JOHNSON'S MOTION TO DISMISS

Angeles, CA 90012 before the Honorable John F. Walter, United States District Judge, defendant Jeffrey W. Johnson ("Justice Johnson"), Justice of the California Court of Appeal, will and hereby does respectfully move the Court for an order dismissing plaintiff Tatiana Sauquillo's ("plaintiff") complaint against him pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) on the ground that the sole cause of action (No. 1) asserted against Justice Johnson is time barred.[1]

    Justice Johnson makes this motion based on the notice of motion and motion, the accompanying memorandum of points and authorities, the pleadings and papers on file herein, the argument of counsel at the hearing of this matter, and any matter of which the Court may or must take judicial notice.

Dated: September 11, 2019          Respectfully submitted,

                                         _____
                                         Craig Missakian
                                         Attorney for Defendant
                                         Justice Jeffrey W. Johnson

---

[1] Plaintiff prepared and submitted to plaintiff's counsel for review a the joint statement of compliance with Civil Local Rule 7-3 required by § Section 5(b) of the Court's Standing Order. Because of what appears to be the departure of the counsel who conducted the meet and confer, the parties were unable to execute the joint statement prior to filing this motion. Defendant's counsel will endeavor to get the joint statement signed and filed. Section 5(a) of the Court's standing order also requires that the date selected for the hearing not be more than 35 days after service but October 21, 2019 was the first Monday available after October 14, 2019, which is a court holiday.

**Table of Contents**

I. Introduction ..................................................................................... 6

II. Statement of Relevant Facts ............................................................ 9

III. Discussion ..................................................................................... 12

    A. The claim against Justice Johnson is time barred under Government Code § 12960(d), which requires the employee to file an FEHA complaint within 1 year of the alleged misconduct, where plaintiff waited until October 2018 to file a complaint for conduct that allegedly occurred no later than May 2016 ............. 12

        1. F. R. Civ. P. Rule 12(b)(6) ........................................... 12

        2. Applicable statute of limitations .................................. 14

    B. The continuing violation doctrine cannot save plaintiff's late-filed claim under the California Supreme Court's 3-part test ...... 15

IV. Conclusion .................................................................................... 20

# Table of Authorities

**CASES**

*Acuna v. San Diego Gas & Elec. Co.,* 217 Cal.App.4th 1402 (2013) .................... 19

*Alexopulos by Alexopulos v. Riles*, 784 F.2d 1408 (9th Cir. 1986) ....................... 20

*Angeles v. International Ass'n of Heat and Frost Insulators and Asbestos Workers,
Local No. 208*, 108 F.3d 336 (9th Cir. 1997)....................................................... 14

*Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013) ............................... 15

*Clark v. Fresno County*, 861 F.2d 268 (9th Cir. 1988) .......................................... 20

*Cucuzza v. City of Santa Clara*, 104 Cal.App.4th 1031 (2002).............................. 18

*Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964 (9th Cir. 2017)......................... 13

*Hockman v. Westward Communications*, LLC, 407 F.3d 317 (5th Cir.2004) ....... 19

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) .......................... 12

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ................................ 13

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) .................................. 12

*Morgan v. Regents of University of Cal.*, 88 Cal. App. 4th 52 (2000). ............ 15, 16

*Nash v. Electrospace Sys., Inc.*, 9 F.3d 401 (5th Cir.1993).................................... 19

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) .. 15, 17

*Regents of Univ. of California v. Superior Court*, 33 Cal. App. 4th 1710 (1995).. 17

*Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798 (2001)........................................... 15

*Rojo v. Kliger*, 52 Cal. 3d 65 (1990)..................................................................... 14

*Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479 (1996) .................................. 14

*Skidmore v. Precision Printing and Packaging*, 188 F.3d 606 (5th Cir. 1999)...... 21

*Trovato v. Beckman Coulter, Inc.*, 192 Cal. App. 4th 319 (2011).......................... 17

*United Airlines, Inv. v. Evans*, 431 U.S. 553 (1977).............................................. 17

*Valdez v. City of Los Angeles*, 231 Cal. App. 3d 1043 (1991) .............................. 14

*Valentino v. United States Postal Service*, 674 F.2d 56 (D.C.Cir.1982) ............... 16

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ............... 13

*West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir. 1995) ................................. 16

**STATUTES**

California Governmet Code § 12940....................................................... 6, 8, 14, 20

California Government Code §§ 12960 and 12965............................................. 14

**RULES**

Federal Rules of Civil Procedure Rule 12(b)(6)............................................... 8, 12

DEFENDANT JEFFREY W. JOHNSON'S MOTION TO DISMISS

## I. Introduction

Plaintiff's sole claim for relief against Justice Johnson—a state law claim for sexual harassment under California Government Code § 12940(j)—is time-barred. By plaintiff's own admission, the alleged conduct—conduct Justice Johnson adamantly denies occurred at all—happened no later than June 2016 when plaintiff requested and received a transfer out of the California Highway Patrol's ("CHP") judicial protection unit and had no further contact with Justice Johnson. Plaintiff did not, however, file her administrative complaint with the state's Department of Fair Employment and Housing ("FEHA" complaint)—a mandatory jurisdictional requirement—until October 30, 2018. Under Government Code § 12960(d),[2] failure to file the required administrative complaint within a year of the alleged conduct constitutes an absolute bar.

Plaintiff does not question the 1-year statute or its application to her case. Rather, she seeks to avoid it by relying on the so-called "continuing violation" doctrine. Under the doctrine, she argues, the 1-year statute did not begin to run until 2018 when she took stress leave at the end of what she alleges was a decade of "frequent, systematic and ultimately disabling sexual and racial discrimination

---

[2] All references to "Government Code" are to California Government Code.

because she is a Black woman" at the hands of multiple individuals at virtually all of her assignments. (Complaint for Civil Damages ("Complaint"), at ¶ 2.)

The continuing violation doctrine, which plaintiff badly misconstrues, cannot save her late-filed claim against Justice Johnson. Like most equitable tolling rules, the continuing violation doctrine applies in situations where the alleged victim did not know and did not have reason to know of the claimed injury he or she had suffered. The doctrine does not apply to claims involving discrete acts of harassment or discrimination where the employee—like plaintiff here—not only ***knew*** of the alleged conduct but ***complained*** about it to her employer, obtained ***relief*** from her employer, and yet for strategic reasons sat on her known rights for years. Applying the doctrine in such a situation is not only contrary to settled law but extremely unfair.

The continuing violation doctrine does not apply to claims, like the present claim, where the conduct attributed to Justice Johnson constituted discrete acts of alleged harassment that, in the language of the cases, had "acquired a degree of permanence" for which a plaintiff could have sued on at the time. To avoid that rule, plaintiff tries to recast the conduct as being part of an ongoing hostile work environment that allegedly existed during virtually her entire tenure with the CHP. Putting aside the inherent implausibility of plaintiff's suggestion that Justice Johnson had anything to do with plaintiff's work at the CHP, the continuing

violation doctrine, even if applicable to hostile work environment claims, does not apply here.

To fit within a hostile work environment claim into the continuing violation doctrine, plaintiff cannot only allege acts that occurred outside the 1-year limitations period but, critically, must allege an unlawful act occurring *within* the 1-year period *that involved Justice Johnson*. Actions taken or not taken by other individuals or by the CHP in which Justice Johnson did not participate—or even know about—are entirely irrelevant. That is because, unlike an employer, Government Code § 12940(j)(3) limits an individual's liability to acts he or she took personally. Since plaintiff has not, and cannot, allege any illegal acts by Justice Johnson within the relevant 1-year period, the doctrine is inapplicable and the complaint's first claim for relief against him must be dismissed.[3]

---

[3] Plaintiff, it seems, recognizes this problem but tries to circumvent it by attempting to fit Justice Johnson into the broader rule applicable to employers by alleging that Justice Johnson was *both* an employee *and* an employer. *Cf.* Complaint, ¶ 10 ("Justice Johnson is employed by Appellate Court") *with* Complaint, ¶ 54 ("Defendants, and each of them, . . . were joint employers"). For obvious reasons, an employer, which must act through its agents, has potential liability for discrimination, sexual harassment, and hostile workplace environment claims that extends beyond the individual liability of any particular employee accused of taking part in the misconduct. Plaintiff's pleading gambit in which she attempts to expand Justice Johnson's personal liability by alleging he was a joint employer should be rejected. As discussed below, even under the liberal standards applicable to ruling on this Rule 12(b)(6) motion, the Court need not accept as true the allegation that Justice Johnson was plaintiff's employer where the allegation contradicts an admission in the complaint, is a legal conclusion not a fact,

## II. Statement of Relevant Facts

Plaintiff began work as a CHP officer in 2009, when she started her CHP academy training. (Complaint, ¶ 14.) According to the complaint, plaintiff's mistreatment started almost immediately and continued throughout her CHP tenure until she was forced to take stress-related leave in 2018. The alleged mistreatment included, according to the complaint, the period from 2009 through 2012 during which time plaintiff "experienced . . . incidents of sex and racial discrimination." (Complaint, ¶ 21.) Although plaintiff was aware of the alleged misconduct, she chose not to report it because "her experience taught her that, had she contemporaneously reported the incidents, her complaints would have fallen on deaf ears." (*Id.*)

In approximately April 2012, plaintiff "applied for reassignment because of the harassment and pressure she felt from coworkers." (Complaint, ¶ 25.) The CHP granted the request and reassigned her to the CHP's Transportation Management Section, where she worked from approximately April 2012 to September 2013. (*Id.*) In 2013, plaintiff applied for a position in the CHP's Judicial Protection Section (JPS) where she first cross paths with Justice Johnson. (Complaint, ¶ 26.)

---

contradicts other facts of which the Court may take judicial notice, and, frankly, is unreasonable on its face. *See infra* at 12-13 (discussing same). That said, the Court need not resolve the issue because the Justice Johnson-related claims are time-barred against Justice Johnson, the Court of Appeal, and the CHP.

Once in the JPS, plaintiff alleges that Justice Johnson "sexually propositioned [her], physically touched her against her will and otherwise continuously harassed her." (*Id.*) Although plaintiff does not give specific dates for any of the alleged misconduct, according to the complaint, "[t]his unwanted sexual harassment began in 2014, a few months after Officer Sauquillo's JPS assignment and was persistent through May 2016." (*Id.*)

The acts that plaintiff attributes to Justice Johnson, which he adamantly denies, include specific and discrete instances that would have appeared to any reasonable person—and apparently appeared that way to plaintiff as well—as acts of sexual harassment. They included "comments about her physical appearance" (Complaint, ¶ 27), telling her to take her clothes off (*id.*), and expressing a desire to have intercourse with her (*id.*). The conduct even included his allegedly placing his "hand on [plaintiff's] thigh and caress[ing] the length of her leg until she sternly told him to stop." (*Id.*) Although the entire story is a complete fabrication, the other alleged instances were all similarly egregious. *See id.*

Plaintiff perceived, as any person would, Justice Johnson's alleged conduct as harassing and improper at the time it occurred. In fact, "[s]he [] communicated her discomfort and despair to her close friends and loved ones . . . [and] resorted to asking her coworkers to cover her shift with Justice Johnson on multiple occasions and isolated herself in order to call her boyfriend to complain." (*Id.*) And she did

not just complain to friends and loved ones. Plaintiff also claims to have reported the alleged misconduct to "two other appellate justices in the Courts [sic] of Appeal," but the complaints went nowhere. (Complaint, ¶ 28.) "One Appellate Justice simply told Officer Sauquillo to 'be careful' [and] [n]either appellate Justice initiated an investigation of Officer Sauquillo's allegations." (*Id.*) Similarly, plaintiff claims she reported Justice Johnson to the CHP but, again, "no one initiated an investigation." (*Id.*)

Faced with no one taking her complaints seriously, plaintiff alleges that she "desperately wanted to escape Defendant Justice Johnson's sexual harassment" and "requested and received a reassignment" out of the Court of Appeal, which she describes as a "separate entity" (Complaint, ¶ 43), to the CHP's West Los Angeles office in 2016. (Complaint ¶¶ 29 and 30.) Plaintiff does not allege any further contact with Justice Johnson—let alone harassing behavior—after she transferred to the West Los Angeles Office. She does, however, allege that her mistreatment—now at the hands of others—continued.

This alleged mistreatment falls into two main categories. First, plaintiff claims the CHP and at least one individual officer interfered with her "lactation rights" in various ways. (*See* Complaint, ¶¶ 32-50.) Second, unlike the treatment "[s]imilarly situated male, non-Black CHP officers" would have received she alleges that the CHP did not give her "physical, emotional and mental support"

after an email about accusations she made against Justice Johnson was accidentally sent to state government personnel. (Complaint, ¶48.) There is no allegation that Justice Johnson had any involvement with plaintiff's lactation rights or that he had anything to do with dissemination of the email.

Plaintiff claims that she has been the victim of what she calls "intersectional harassment and discrimination throughout her CHP career." (Complaint, ¶ 49.) "The experience of multiple conversations informed [her] that, because of the color of her skin and due to her gender, her peers generally did not care about what she thought, the manner in which she felt, or the fashion in which she was treated." (Complaint, ¶ 50.) As a result, "[h]umiliated and feeling defeated, [she] felt that she could no longer face the emotional strain of dealing with her coworkers . . . [and] submitted her DFEH "intake form" on October 30, 2018. (Complaint, ¶ 50.) She received a right to sue letter on March 29, 2019. (*Id*.)

III. Discussion

    A.    **The claim against Justice Johnson is time barred under Government Code § 12960(d), which requires the employee to file an FEHA complaint within 1 year of the alleged misconduct, where plaintiff waited until October 2018 to file a complaint for conduct that allegedly occurred no later than May 2016**

        1.    *F. R. Civ. P. Rule 12(b)(6)*

The court may dismiss a claim under Rule 12(b)(6) where, as here, "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase*

*Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). *See also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled").

In reviewing the complaint, the court "accept[s] as true Plaintiffs' nonconclusory factual allegations, construe[s] all reasonable inferences in favor of Plaintiff[], and ask[s] whether the facts are sufficient to state a claim to relief that is plausible on its face." *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964 (9th Cir. 2017). As lenient as this rule may be, it is subject to important limitations. The Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir.1996) (1997). The claim must also be "plausible on its face" and the inferences the court draws must be reasonable. *See Telesaurus VPC, LLC v. Power* , 623 F.3d 998, 1003 (9th Cir. 2010).

Moreover, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint and

[w]e do not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

Even accepting as true plaintiff's well-pleaded factual allegations, it is clear from the face of the complaint that the claim against Justice Johnson is time-barred. Likewise, the complaint itself establishes that the continuing violation doctrine does not apply.

### 2. *Applicable statute of limitations*

An employee who wants to sue for discrimination or harassment under § 12940 must first exhaust his or her administrative remedies by filing a complaint with the Department of Fair Employment and Housing ("DFEH"). *Angeles v. International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local No. 208*, 108 F.3d 336 (9th Cir. 1997) (*citing Rojo v. Kliger*, 52 Cal. 3d 65, 83-84 (1990)). That complaint must be filed within 1 year of the date (or dates) on which the alleged act (or acts) of discrimination or harassment occurred. *See* Cal. Gov. Code §§ 12960 and 12965(b). "Discrimination complaints not timely filed with the [DFEH] cannot be the basis for a civil action against the employer." *Valdez v. City of Los Angeles*, 231 Cal. App. 3d 1043, 1052 (1991). "The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA." *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 492 (1996) (citations omitted).

The conduct alleged against Justice Johnson, according to the complaint, began in 2014 and ended in May 2016 when plaintiff transferred out of the JPS. (Complaint, ¶¶ 26 and 31.) Plaintiff did not file her DFEH complaint until October 30, 2018—well after the 1-year statute of limitations had run. (Complaint, ¶ 50.) As such, unless the claim against Justice Johnson falls within the scope of the continuing violation doctrine, and as discussed below it does not, plaintiff's first claim for relief under § 12940(j) is time-barred.

### B. The continuing violation doctrine cannot save plaintiff's late-filed claim under the California Supreme Court's 3-part test

Generally, "[t]he continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them. *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013) (*citing Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001) ("*Richards*") and *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 118 (2002). Critically, this doctrine is intended to apply in situations where the employee does not realize that her rights have been violated—just the opposite of what occurred here. *See Morgan v. Regents of University of Cal.*, 88 Cal. App. 4th 52, 65 (2000).

In *Richards*, the California Supreme Court adopted a three-part test holding that for the doctrine to apply: (1) the actions must be sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree

of "permanence" so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile. *See Richards*, 55 Cal. 4th at 812, 824. *See also Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (to establish a continuing violation, a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the (limitations) period.").

The *Richards* test seeks to distinguish between cases, like the present, where the alleged conduct involved discrete acts—where the continuing violation doctrine does not apply—and situations involving ongoing discrimination or harassment rising to the level of a hostile work environment. As the court explained in *Morgan*, "[t]he plaintiff must demonstrate that at least one act occurred within the filing period and that "the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.' [Citation.] The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." *Morgan*, 88 Cal. App. 4th at 65 (*quoting West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).

The first element of the *Richards* test requires that conduct outside the statutory period—in this case prior to October 30, 2017—be "sufficiently similar in kind" to conduct occurring within the period. In other words, at least some

alleged instance must occurring during the limitations period must be similar in kind to the earlier alleged conduct. *See Trovato v. Beckman Coulter, Inc.*, 192 Cal. App. 4th 319, 326 (2011) (plaintiff cannot establish continuing violation if no conduct occurred in limitations period). The doctrine does not apply, however, where only the effect of discontinued discriminatory practices is ongoing. *See United Airlines, Inv. v. Evans, 431 U.S. 553 (1977); Regents of Univ. of California v. Superior Court*, 33 Cal. App. 4th 1710, 1717 (1995) ("[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." (*quoting Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)).

Here, plaintiff alleged a long course of discriminatory and harassing conduct over the decade she worked for the CHP. The alleged conduct involving Justice Johnson, however, was discrete and unrelated to anything that occurred before or, more importantly, after plaintiff left the JPS. In fact, the two types of conduct—alleged sexual harassment, on one hand, and interference with lactation rights and failure to comfort after the email leak, on the other hand—could not be more different. Accordingly, it is impossible to say that the conduct attributed to Justice Johnson was related in any way to any of the other alleged conduct that occurred during the limitations period. *See Morgan*, 536 U.S. at 113 (in Title VII case "discrete . . . acts are not actionable if time barred, even when they are related to

acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act.").

For the doctrine to apply, there must be at least some unlawful act that occurs within the limitations period—in this case between October 2017 to October 2018. Plaintiff has not, and cannot, allege such an act where she left the JPS in June 2016 and is not alleged to have had any further contact with Justice Johnson. Nor can the fact that plaintiff has alleged she was the victim of discrimination or harassment by others after she left the JPS save her claim. For the doctrine to apply, there must be "a series of related acts" ***involving Justice Johnson*** both inside and outside the statutory period. That is because Justice Johnson cannot be held personally liable for acts committed by others. In other words, even if plaintiff could allege a hostile work environment that continued during her entire tenure with the CHP, Justice Johnson cannot be held responsible for it.

Under the third prong of the *Richards* test, the tolling period ends when the alleged harassing conduct achieves a level of permanence, *i.e.,* when a reasonable employee would understand "further efforts to end the unlawful conduct will be in vain." *Richards*, 26 Cal. 4th at 823. Such futility can manifest itself in a number of ways, including if the employer ignores the employee's complaints on several occasions. *Cucuzza v. City of Santa Clara*, 104 Cal.App.4th 1031, 1035-1037, 1042-1043 (2002) (complaint reached permanence after supervisor repeatedly

refused to address plaintiff's request to work in a particular job and plaintiff's internal grievances challenging these decisions were denied); *Acuna v. San Diego Gas & Elec. Co.,* 217 Cal.App.4th 1402, 1414-1415 (2013) (failure to accommodate claim achieved permanence when employer denied informal accommodation request for a second time and employee hired attorney).

In addition, two periods of alleged harassment—in this case plaintiff has alleged three—can be severed by the intervening acts of the employer. For example, as one court explained in the context of Title VII, "[w]hen a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Hockman v. Westward Communications*, LLC, 407 F.3d 317, 329 (5th Cir.2004) (*quoting Nash v. Electrospace Sys., Inc*., 9 F.3d 401, 402 (5th Cir.1993)). "`Prompt remedial action' must be `reasonably calculated' to end the harassment." *Id.* (*quoting Skidmore* v. *Precision Printing and Packaging, Inc*., 188 F.3d 606, 615 (5th Cir. 1999)).

The actions attributed to Justice Johnson, whether taken individually or as a group, would have constituted a violation § 12940(j). Plaintiff alleges that she was aware of the alleged acts and, in fact, did not hesitate to complain about them to her employer and to others. In fact, she sought and received a transfer because she "desperately wanted to escape Justice Johnson's sexual harassment." (Complaint,

¶ 29.) In other words, in 2014, 2015, and 2016 when these acts allegedly occurred, plaintiff not only had reason to know but in fact knew of the injury she claims to have suffered and that is when the statute accrued for any alleged claim against Justice Johnson. *See, e.g. Alexopulos by Alexopulos v. Riles*, 784 F.2d 1408, 1411 (9th Cir. 1986); *Clark v. Fresno County*, 861 F.2d 268 (9th Cir. 1988). She cannot now seek to use later acts—allegedly committed by people that Justice Johnson does not know in a place where he does not work—to revive her time-barred claims. Adopting such a rule would all but eliminate the limitation on personal liability under § 12940(j)(3) and statute of limitations. The Court should reject plaintiff's invitation to do either.

## IV. Conclusion

For all of the reasons stated above, Justice Johnson respectfully requests that the Court dismiss plaintiff's first claim for relief against him with prejudice.

Dated: September 11, 2017                     Respectfully submitted,

                                              _____
                                              Craig Missakian
                                              Attorney for Defendant
                                              Justice Jeffrey W. Johnson